**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-15617 (SDW) <br><br> **OPINION** <br><br> April 13, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Cheryl G.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Sharon Allard's ("ALJ Allard") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Allard's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.     **PROCEDURAL AND FACTUAL HISTORY**

    A.     **Procedural History**

Plaintiff filed for DIB and SSI in August 2017, alleging disability beginning on June 9, 2014, due to post-traumatic stress disorder. (D.E. 6 (Administrative Record ("R.")) at 16, 243–55, 278.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 167–79.) Plaintiff received a hearing before ALJ Allard on July 31, 2019, and the ALJ issued a written decision on November 8, 2019, finding that Plaintiff was not disabled. (R. 16–33, 46–108.) The Appeals Council denied review on September 10, 2020, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–4; D.E. 1.) The parties completed briefing and Plaintiff did not file a reply. (D.E. 15, 20.)[2]

    B.     **Factual History**

Plaintiff is 58 years old and alleges that she has been disabled since she was 49 years old. (*See* R. 109.) She has a high school education and two years of college with a certificate in materials management. (R. 22, 31, 55–56.) She has previously worked as a leasing agent, contract coordinator, and purchasing assistant. (R. 58–64.) The following is a summary of the relevant medical evidence in the record.[3,4]

Plaintiff has no vision in her left eye. (R. 57.) She is unable to obtain a driver's license and regularly uses public transportation. (R. 56–58.) She lives alone in New Jersey and has no

---

[2] Defendant failed to respond to Plaintiff's Statement of Contentions in accordance with Local Civil Rule 9.1(d)(2).

[3] Plaintiff failed to include a proper "statement of facts with references to the administrative record" in her moving brief, disregarding Local Civil Rule 9.1(e)(5)(C). The purpose of the section is not merely to summarize the procedural history of the case, but to provide an overview of Plaintiff's medical records, especially those records that support her disability claim. Plaintiff's attorney is advised that filing non-compliant briefs in the future may result in sanctions, including dismissal.

[4] Defendant also did not summarize the medical records, and instead referred to the facts as summarized by the ALJ. (D.E. 20 at 3.) However, Defendant was not required to provide such a summary. *See* L. Civ. R. 9.1(e)(6)(A) (stating that Defendant's brief "may contain counter-statements to the Plaintiff's . . . statement of facts, if Defendant disagrees with any portion thereof").

children. (*See* R. 13, 67.) Plaintiff was assaulted at night in the 1980s, and she was verbally and physically threatened by her brother in 2017, which led her to stay at a shelter run by the YWCA. (R. 82–83.) While there, she attended group counseling and saw a psychiatrist who prescribed medication. (R. 83.) She alleges that she has since experienced nightmares, heart racing, panic attacks, anxiety, lack of focus, forgetfulness, and depression, which affect her ability to work. (*See* R. 84–90.) She sees a counselor twice a month for her mental health and sees a psychiatrist approximately every three months. (*See* R. 89.) Plaintiff only takes her medication when she feels she needs it, to avoid side effects. (R. 89–90.) Instead, she uses essential oils or "natural remedies" to calm herself. (R. 377, 1165.)

In the day-to-day, Plaintiff goes to the library, attends therapy sessions, talks on the phone, chats online, goes to the store, sees friends, and goes to the social service office for assistance programs. (R. 76–77, 305.) In May 2019, Plaintiff traveled to another town in New Jersey for a two-day conference, to keep her certification as a registered public purchasing specialist. (R. 76–78.) The conference was for seven hours each day with three breaks. (R. 77–78.)

According to Plaintiff's medical records, Plaintiff only occasionally mentioned difficulties associated with her left eye, and her visual limitations were generally reported by way of history. (R. 24; *see, e.g.*, R. 802.) With respect to mental impairments, Plaintiff's medical records do not contain any evidence of emergency room visits or hospitalization. Instead, they generally show that she exhibits mild to moderate symptoms when she showed any evidence of impairment at all. For example, in October 2017, Plaintiff exhibited a normal thought process, cooperative behavior, normal mood, normal speech, "no evidence of any serious memory problems," and "a reasonable fund of general information." (R. 467–68.) She could follow conversation topics, follow instructions, and do simple calculations, albeit with some mistakes. (R. 468.) In April 2018,

3

Plaintiff was appropriately groomed, alert, fully oriented, and cooperative, with good eye contact and unremarkable motor activity, speech, and mood. (R. 785.) Her affect had a full range with unremarkable modulation and intensity, and her thought processes, thought content, and perception were also all unremarkable. (*Id.*) Plaintiff's concentration, attention, and memory were intact, her estimated intelligence was average, she had a good fund of knowledge, and her insight and judgment were good. (R. 786.) In June 2018, Plaintiff's thought organization was logical, her thought content was normal, she had no memory impairment, she was properly oriented and cooperative, and her impulse control, judgment, insight, intellectual capacity, and motivation were all adequate. (R. 1150–51.) "Her level of insight of presenting [her] problem was high," and she reported a readiness to begin treatment. (R. 1153.) However, in September 2018, while it was otherwise normal, Plaintiff's mental status exam showed a fair fund of knowledge, poor insight and judgment, and a reportedly depressed mood. (R. 1166–67.)

Notably, Plaintiff's medical records show that she was generally noncompliant in taking the psychiatric medications prescribed to her by her doctors or unwilling to accept such prescriptions. (*See* R. 376–77, 847, 1141, 1165, 1189.) Instead, she reported using essential oils, supplements, and "natural remedies." (R. 377, 1165.) In May 2018, Plaintiff denied having anxiety or a depressed mood. (R. 863.) However, a year later, Plaintiff's doctor observed that Plaintiff was at a higher risk of depression, anxiety, and insomnia due to her "refusal to take medications," and, as a result, the "treatment goals [were] not yet met." (R. 1193.)

Several non-treating physicians reviewed Plaintiff's medical records and offered their opinions. On December 5, 2017, Algernon Phillips, M.D., reviewed Plaintiff's vision records and opined that she cannot perform jobs requiring depth perception but was able to handle any size object frequently and avoid the normal hazards of the workplace. (R. 115, 128.) The doctor

4

concluded that Plaintiff's monocular vision is a non-severe impairment. (R. 115, 128.) Roberta Strauchler, M.D., also reviewed Plaintiff's vision records on March 27, 2018, and opined that, due to Plaintiff's lack of depth perception, she should not climb ropes, ladders or scaffolds, should not drive commercially, should avoid hazardous machinery, and should avoid work that requires excellent depth perception or a full binocular field. (R. 145, 159.) However, the doctor noted that Plaintiff's visual acuity is sufficient to perform clerical work, such as reading normal-sized print, typing, filing, and using the computer. (R. 145, 159.) On November 15, 2017, Alan Goldfeder, M.D., an ophthalmologist, performed a consultative exam on Plaintiff. (R. 470–71.) He noted functional limitations in her left eye and advised her to obtain polycarbonate protective glasses with a reading addition. (R. 471.) He noted that Plaintiff did not meet the definition of legal blindness when she wore the proper lenses, and that she should avoid working in any environment requiring "excellent depth perception or full field abilities or excellent binocular visual acuity," such as with dangerous machinery or at heights. (*Id.*)

Non-examining advisors, Therese Harris, Ph.D., and Joseph Wieliczko, Psy.D., reviewed Plaintiff's psychiatric records. (R. 109–34, 137–64.) They generally opined that Plaintiff is not significantly limited to carrying out very short and simple instructions, that she has moderate limitations in carrying out detailed instructions, and that she is able to maintain focus, pace, and persistence for simple tasks for two-hour periods over an eight-hour workday with a normal 40-hour workweek schedule. (R. 117–18, 130–31, 145–46, 159–60.) They also generally found that Plaintiff has moderate limitations with interacting with the general public, she is not significantly limited to asking simple questions or requesting advice, she is moderately limited to accepting instructions and responding appropriately to criticism from supervisors, and she is moderately limited in getting along with coworkers or peers. (R. 118, 131, 146, 160.) They indicated that

5

Plaintiff is able to interact adequately with the public, manage interpersonal interactions in the workplace, and accept reasonable supervision. (R. 118, 131, 146, 160.) Overall, with respect to adaptation limitations, they indicated that Plaintiff is able to recognize normal hazards, adapt to minor changes in work demands, and manage routine work-related stress and pressures. (R. 119, 132, 147, 161.)

On October 5, 2017, Alec Roy, M.D., conducted a psychiatric consultative exam on Plaintiff. (R. 466–68.) The doctor's mental state evaluation was largely normal, except that Plaintiff (1) could only make out light, not objects, in her left eye, (2) was briefly in special education (likely erroneously because the school did not realize that she was blind in her left eye), (3) made an error when asked to spell "world" backwards, and (4) could perform simple math calculations but had trouble subtracting 7 serially from 100. (R. 467–68.)

### C. Hearing Testimony

Plaintiff appeared with her attorney and testified at an administrative hearing before ALJ Allard on July 31, 2019. (R. 16, 46–93.) ALJ Allard also heard testimony from Mary Anderson ("VE Anderson"), an impartial vocational expert. (R. 16, 93–106.) VE Anderson testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Allard, could not perform Plaintiff's past jobs but could work as a hospital cleaner, office helper, and document preparer. (R. 32, 95.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

7

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

    **B.**    **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

On November 8, 2019, ALJ Allard issued a decision concluding that Plaintiff was not disabled from June 9, 2014, through the date of the decision. (R. 16–33.) At step one, the ALJ found that, although Plaintiff had earned some money from working, she had not engaged in substantial gainful activity since June 9, 2014. (R. 18.) At step two, the ALJ found that Plaintiff had two severe impairments: anxiety, affective, trauma related disorders and visual impairment. (R. 19.) At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 19–22.)[5]

Prior to step 4, ALJ Allard assessed Plaintiff's RFC and found that Plaintiff could:

[P]erform a full range of work at all exertional levels but with the following nonexertional limitations: Cannot climb ladders ropes and scaffolds. Must avoid all hazards including moving mechanical parts or unprotected heights. The claimant has monocular vision and can perform tasks, which do not require accurate measurements of distance and speed or bilateral peripheral vision. The claimant can understand and execute simple and routine tasks where production is measured no earlier [than] the end of the work day; have occasional contact with coworkers and supervisors; have incidental contact with the public but not with tasks that involve direct customer service; and make simple decisions and adapt to occasional changes in essential work tasks.

(R. 22; *see* R. 22–31.) At step four, the ALJ found that someone with Plaintiff's RFC could not perform Plaintiff's past jobs as a leasing agent and purchasing/contracting clerk. (R. 31.) At step five, the ALJ relied on VE Anderson's testimony to find that Plaintiff could additionally work as a hospital cleaner, office helper, and document preparer. (R. 32.) ALJ Allard therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

---

[5] Specifically, ALJ Allard analyzed the requirements of Listings 1.02 (major joint dysfunction), 1.04 (spine disorders), 2.02 (impairment of visual acuity), 2.03 (contraction of visual field in the better eye), 2.04 (loss of visual efficiency), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).

**B.      Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E. 15 at 9–10.)  Plaintiff asserts that (1) she is physically unable to perform the jobs listed at step five and (2) the ALJ's RFC assessment is not supported by substantial evidence.  (*See id.* at 11–35.)  This Court considers the arguments in reverse order and finds each unpersuasive.

First, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.  (*See id.* at 28–35.)  Specifically, Plaintiff argues that the ALJ should have (1) added limitations for additional breaks or off-task allowances to accommodate Plaintiff's mental impairments and (2) added additional limitations to accommodate Plaintiff's inability to accurately measure distance and speed due to her bilateral peripheral vision impairment.  (*See id.* at 29, 33–34.)  However, it is Plaintiff's burden to prove that her condition is disabling or that additional limitations are necessary.  *See* 20 C.F.R. § 404.1512(a).  A mere diagnosis is insufficient to demonstrate a severe impairment or functional limitations.  *See Raglin v. Massanari*, 39 F. App'x 777, 779 (3d Cir. 2002) ("The existence of a medical condition does not alone demonstrate a disability for purposes of the Social Security Act." (citing *Pet. of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990))).  "[T]he ALJ's inquiry does not focus simply on whether [a claimant] suffers from the various physical or psychological conditions in question.  Rather, the issue is whether those conditions . . . result in a functional disability that prevents [the claimant] from obtaining substantial gainful employment in the national economy."  *Id.*

Here, with respect to Plaintiff's visual impairment, no treating provider considered greater functional limitations than those which the ALJ assessed.  (*See* R. 24.)  Plaintiff only occasionally mentioned difficulties regarding her left eye, and generally did so by way of history.  (R. 24, 802.) The ALJ expressly stated in her RFC assessment that, due to Plaintiff's monocular vision, Plaintiff

can only perform tasks that do not require accurate measurements of distance and speed or bilateral peripheral vision. (R. 22.) Given the record, this was sufficient.

The record also supports a finding that Plaintiff's mental impairments were not disabling. It does not document any significant abnormalities of cognitive functioning, thought processes, thought content or speech. (*See* R. 24.) Instead, the record shows that Plaintiff's mental status was generally normal with few exceptions, as discussed above. (*See* R. 466, 468, 785–86, 1138–53, 1167.) Plaintiff's daily activities also show that she is able to perform some work. For example, Plaintiff regularly participates in group therapy sessions, talks and chats online and on the phone, see friends, goes to the store and library, goes to the social service office for assistance programs, and takes public transportation. (*See* R. 76–77, 304–05, 400, 731.) She also travelled to attend a two-day conference to retain her certification as a registered public purchasing specialist. (*See* R. 76–78.)

Plaintiff emphasizes her moderate limitations in all areas of mental functioning, as assessed by the ALJ. (D.E. 15 at 33; R. 21–22.) She also cites to a September 2017 therapy note stating that she "presented as overwhelmed" and needed the therapist "to repeat step by step instructions regarding discharge." (D.E. 15 at 34 (citing R. 440).) However, given the overall record, including Plaintiff's daily activities and repeated decisions to forgo medication, substantial evidence supports the ALJ's finding that Plaintiff had the ability to make simple decisions and adapt to occasional changes in essential work tasks. (R. 25.) Although not required by the objective evidence, the ALJ also accommodated Plaintiff's subjective complaints about dealing with the public and crowds, and accordingly limited Plaintiff to only occasional contact with coworkers and supervisors, incidental contact with the public, and no tasks involving direct customer service.

13

(*Id.*)  There is substantial evidentiary support for the ALJ's RFC assessment, and the assessment will therefore stand.[6]

Second, Plaintiff argues that the ALJ erred at step five in determining that there were jobs that Plaintiff could perform in the national economy.  (*See* D.E. 15 at 11–24.)  Plaintiff contends that the VE's testimony was not consistent with information contained in the *Dictionary of Occupational Titles* [DOT], ignored the limitations imposed by the ALJ's hypothetical questions, and was based on the VE's professional experience, which did not include recent experience placing applicants in positions.  (*See id.* at 12–24.)

However, an ALJ is not bound by the DOT, as it is not a superior or controlling source in determining whether work exists in the national economy.  *See* SSR 00-4p (stating that neither the DOT nor the VE automatically "trumps" when there is a conflict).  Here, VE Anderson's testimony supported the denial of benefits.  (*See* R. 94–95.)  Where her testimony was inconsistent with the DOT, she explained that it was based on her professional experience, which this Court has reviewed and finds sufficient.  (R. 103–04, 370–73.)  The ALJ gave weight to the VE's explanation that depth perception and field of vision are not requirements for the hospital cleaner, office helper, and document preparer jobs.  (R. 32; *see* R. 93–106.)  Based on that testimony, the ALJ appropriately determined that Plaintiff could perform the proposed jobs.  (R. 32.)

---

[6] Contrary to Plaintiff's argument, (D.E. 15 at 30–33), Plaintiff's case is distinguishable from *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).  In *Ramirez*, the Court held that a limitation to one to two-step tasks did not adequately encompass a finding that the plaintiff "*often* suffered from deficiencies" in one area of mental functioning, namely "concentration, persistence, or pace."  *Ramirez*, 372 F.3d at 554.  The Court held that greater specificity than a limitation to "simple one or two-step tasks" was necessary to present the functional limitations caused by that mental impairment in a hypothetical to the VE.  *Id*.  However, plaintiff Ramirez had an extensive mental health treatment record and the evidence suggested that Ramirez's deficiency in pace would have limited her ability to perform simple tasks under a production quota.  *See id*. at 548, 554–55.  In contrast, here, there is substantial evidence in the record that Plaintiff's moderate limitations in the areas of mental functioning do not preclude her from performing unskilled work.  *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (holding that a hypothetical question limiting plaintiff to "simple, routine tasks" adequately captured the ALJ's finding that the plaintiff had "moderate limitations with his ability to maintain concentration, persistence and pace").

Furthermore, although the hypothetical question at issue included additional environmental limitations that made it more restrictive than the final RFC, the error was harmless and actually supports the ALJ's determination that Plaintiff can perform the proposed jobs. The question to the VE included all of the RFC limitations that the ALJ properly assessed, and the VE's testimony therefore supports the ALJ's conclusion that Plaintiff was not disabled. *See Chrupcala v. Bowen*, 829 F.2d 1266, 1276 (3d Cir. 1987).

Reviewing the ALJ's decision and the medical record as a whole, it is clear that Plaintiff is able to perform a range of work with certain physical, mental, and social restrictions. No physician has opined otherwise. Substantial evidence—*i.e.*, more than a mere scintilla of evidence—supports the ALJ's decision and this Court will therefore affirm.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Allard's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties